535 A.2d 656

**Alexander LUPINSKI and Carol Lupinski, His Wife, Appellees,**

**v.**

**HERITAGE HOMES, LTD., Appellant,**

**v.**

**William A. BROJACK Individually and t/a Brojack Lumber Company, Appellee (Two Cases).**

Superior Court of Pennsylvania.

Argued Sept. 15, 1987.

Filed Jan. 11, 1988.

John J. Brier, Scranton, for appellant.

Patrick C. Carey, Scranton, for Lupinski, appellees.

Jan Kuha, Scranton, for Brojack, appellees.

Before McEWEN, OLSZEWSKI and DEL SOLE, JJ.

DEL SOLE, Judge:

In 1979, Appellees, the Lupinskis, contracted with Appellant, Heritage Homes, for the construction of a home. Thereafter, Heritage entered into an agreement with Appellee, Brojack Lumber Company, by which Brojack would supply Heritage with the lumber necessary for the construction of the home. Shortly after moving into the house, the Lupinskis filed a complaint against Heritage alleging that the lumber which was used in building the dwelling was infested with wood-boring insects. The complaint also stated that the insects were in the wood at the time of construction. Subsequently, Brojack was joined as an additional defendant by Heritage by way of an original defendant's complaint. The complaint averred that Brojack was jointly and severally liable with Heritage, or was liable over to Heritage, due to the fact that Brojack had supplied all of the lumber used in the construction of the house.

Following a jury trial, the jury returned a verdict in the Lupinskis' favor and against Heritage for $36,522.35. In addition, the verdict found in Heritage's favor and against Brojack in the amount of $4,664.00. Heritage filed timely

motions for a judgment n.o.v. and a new trial which were denied by the trial court. Judgment was entered on the verdict in favor of the Lupinskis and against Heritage on February 2, 1987. Judgment was entered on the verdict in favor of Heritage and against Brojack on February 17, 1987. These timely appeals followed.[1]

Heritage presents three issues on appeal:

1. Whether the doctrine of strict liability under the Restatement (Second) of Torts § 402A applies to a claim for loss of market value of the dwelling itself caused by the defective lumber;

2. Whether the trial court misstated the law on indemnification when it instructed the jury members that they could find Brojack liable over to Heritage for a lesser amount than that for which Heritage was liable to the Lupinskis; and,

3. Whether the proper measure of damages where a defect can be cured is the cost of curing the defect, rather than the loss of market value of the property.

The thrust of Heritage's argument with respect to the applicability of § 402A of the Restatement (Second) of Torts is that the doctrine of strict liability does not apply to a claim for loss of market value of the product itself which was caused by a defective part. At trial, the Lupinskis introduced expert testimony that the market value of the dwelling upon resale was drastically reduced inasmuch as potential buyers would have to be alerted that the house was at one time infested with wood-boring insects. The experts opined that this was the case even though the Lupinskis had had the dwelling fumigated of the insects and received a three-year guarantee against reinfestation. Heritage argues that the Lupinskis' claim for loss of market value was economic in nature and that § 402A does not provide recovery for such damages. Instead, Heritage al-

---

**1.** The appeals from the two judgments were consolidated on May 7, 1987.

leges, the jury should have been only permitted to consider and assess damages under the theories of breach of contract and/or warranties.

Section 402A was adopted by our Supreme Court in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). This section of the Restatement (Second) of Torts provides:

(1) One who sells any product in a defective condition *unreasonably dangerous to the user or consumer or to his property* is subject to liability for physical harm thereby caused to the ultimate user or consumer, *or to his property*, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

(Emphasis supplied).

We agree with Heritage's position that the damages which the Lupinskis alleged during trial were not recoverable pursuant to § 402A. In *Johnson v. General Motors Corp.*, 349 Pa.Super. 147, 502 A.2d 1317 (1986), we discussed the difference between recovery under § 402A and under warranty theories covered by the UCC. We pointed out in *Johnson* that the doctrine of products liability was developed primarily so that consumers could be compensated for personal injury and property damage caused by defective products. By comparison, the UCC provides for losses on bargains and related injuries resulting from failure of the product to meet the expectations of the buyer where the seller's express or implied warranties have been breached. *Id.*, 349 Pa.Superior Ct. at 156, 502 A.2d at 1321, *citing Industrial Uniform Rental Co., Inc. v. International Harvester Co.*, 317 Pa.Super. 65, 74, 463 A.2d 1085, 1089

(1983). We concluded in *Johnson* that the appellant's complaint had to be read with ·a view to determining whether it stated that the allegedly defective product was "unreasonably dangerous (thus implicating tort law) or whether is [was] simply unfit for its intended use or failed to meet appellant's expectations (thus implicating warranty law)."

This approach is consistent with the rule established in *Industrial Uniform, supra,* which held:

> [w]here defective design, manufacture and sale of a product is alleged, where there is nothing in the record to indicate that the defect is a condition potentially dangerous to persons or to property, and where the purported defect results in progressive deterioration of the product itself, the buyer's cause of action for its economic losses [2] against the seller is in breach of warranty under the UCC.

*Id.,* 317 Pa.Superior Ct. at 73, 463 A.2d at 1093.

Parenthetically, we note that the UCC does not govern recovery for breach of implied warranty with respect to buildings. *See* 13 Pa.C.S.A. § 2105 ("goods" defined under the UCC). However, Pennsylvania has "numbered among the first jurisdictions acknowledging an implied warranty of habitability, as well as an implied warranty of reasonable workmanship, in contracts whereby builder-vendors sold newly constructed houses." *Tyus v. Resta,* 328 Pa.Super. 11, 476 A.2d 427, 431 (1984). *Compare* 13 Pa.C.S.A. § 2314 (UCC implied warranty of merchantability provisions). Thus, although *Johnson* and *Industrial Uniform, supra,* were decided under the UCC, we find that the same principles discussed in those cases control the disposition of the case at bar.

**2.** In *Industrial Uniform,* we defined an action alleging "economic harm" as 'an action brought to recover damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits-without any claim of personal injury or damage to other property.' *Id.,* 317 Pa.Superior Ct. at 67, n. 2, 463 A.2d at 1086, n. 2, *quoting* Note, Economic Loss in Products Liability Jurisprudence, 66 Colum.L.Rev. 917, 918 (1966).

Upon review of the record, we find that the Lupinskis failed to present evidence on damages which would have been recoverable under § 402A. The vast majority of evidence offered by the Lupinskis centered upon the devastating effect the infestation had on the marketability of the house. The Lupinskis offered expert testimony by a realtor and an appraiser who opined that the house's resale value plummeted as a result of the taint associated with a dwelling that had once been infested with wood-boring insects. (N.T., 1/15/86, 21, 37). However, we are of the opinion that damages to the marketability of this house are clearly economic in nature since they involve allegations of inadequate value and consequent loss of profits. *See Industrial Uniform, supra,* 317 Pa.Superior Ct. at 67, n. 2, 463 A.2d at 1086, n. 2. Such economic harms are properly recoverable under contract theories of breach of implied warranty.[3]

We conclude, therefore, that the trial court should not have instructed the jury on products liability. Insofar as this instruction was erroneously included in the jury charge to Heritage's possible prejudice, we must remand the instant case for a new trial. We are cognizant that the jury could have reached its verdicts on any one of the other instructions on contracts which were given by the trial court. Nevertheless, "[i]f we are able to conclude that an erroneous charge *might* have prejudiced the appellant, we must grant a new trial, even though we cannot ascertain the extent to which the error influenced the jury." *Gallo v. Yamaha Motor Corp., U.S.A.,* 363 Pa.Super. 308, 321–322, 526 A.2d 359, 366 (1987) (Emphasis supplied).

Judgment reversed. Case remanded for a new trial. Jurisdiction relinquished.[4]

---

**3.** We are mindful that there exists case law in Pennsylvania which suggests that a building is not a "product" for § 402A purposes. *See Cox v. Shaffer,* 223 Pa.Super. 429, 302 A.2d 456 (1973) (a silo found not to be a product within the intent and meaning of § 402A). However, we need not decide that question insofar as the Lupinskis have failed to present evidence of damages recoverable under any circumstances within the realm of § 402A actions.

**4.** Given our disposition of the first issue, we need not consider the remaining arguments raised on appeal.