Robert **BEDNARSKI** and Fadua Bednarski, his wife, and Robert Bednarski, as Administrator of the Estate of Ronald Bednarski, Deceased, Plaintiffs

v.

**HIDEOUT HOMES & REALTY INC., A DIVISION OF U.S. HOMES & PROPERTIES, INC. and William F. Rooney Electrical Contractor, Inc., Defendants/Third–Party Plaintiffs,**

v.

**CUTLER HAMMER CORPORATION, A SUBSIDIARY OF EATON CORPORATION, Walter W. Grote, and Pike–Wayne Inspection Agency, Third–Party Defendants,**

v.

**DOWGARD STYROFOAM, A DIVISION OF DOW CHEMICAL COMPANY, Markel Products and Ettco Wire & Cable Company, Second Additional Third–Party Defendants.**

Civ. No. 87–0831.

United States District Court,
M.D. Pennsylvania.

March 21, 1989.

Ronald J. Mishkin and Gerald J. Geiger, Mervine, Brown, Newman, Williams & Mishkin, Stroudsburg, Pa., for plaintiffs.

John J. Byrne, Scranton, Pa., for Rooney Elec. Contractor, Inc.

John R. Lenahan, Jr., Scranton, Pa., for Hideout Homes and Realty, Inc. a div. of U.S. Homes & Properties.

Henry C. McGrath, Scranton, Pa., (Michael H. King, Eric S. Palles and Jeffrey E. Rogers, Ross and Hardies, Chicago, Ill., of counsel), for Eaton Corp.

Irwin Schneider, Scranton, Pa., for Pike–Wayne Inspection Agency.

Lee Krause, Howell, Krause & Schloesser, Honesdale, Pa., for Walter Grote.

Howard A. Berman, Wilkes–Barre, Pa., for Markel Products.

David W. Saba, Wilkes–Barre, Pa., for Ettco Wire & Cable.

Bruce E. Barrett, Philadelphia, Pa., for Gerald Kaponigro and Home Owners Warranty Co.

William R. Hourican, Manta and Welge, Philadelphia, Pa., for Dow Chemical Co.

## MEMORANDUM AND ORDER

NEALON, District Judge.

Currently before the court is a motion for partial summary judgment filed by defendant William F. Rooney Electrical Contractor, Inc. For the reasons that follow, defendant's motion will be denied.

## BACKGROUND

The factual background of this diversity action is contained in this court's Memorandum and Order of November 30, 1988 and will not be reiterated here at length, 709 F.Supp. 90 (M.D.Pa.1988). *See* document 95 of record. Briefly, the action arises out of a December 30, 1985 fire that allegedly originated in an electrical outlet located in plaintiff's house and completely destroyed the house. Plaintiff's son, Ronald Bednarski, was trapped in the house and died as a result of the fire.

Defendant Rooney was retained by the builder of the home, Hideout Homes and Realty, Inc., to wire and install the electrical system in the house. Rooney filed a motion for partial summary judgment on January 20, 1989. *See* document 112 of record. A supporting brief was submitted the same date. *See* document 113 of record. Plaintiffs responded with a brief in opposition to the motion on February 13, 1989. *See* document 117 of record. Defendant's reply time having elapsed without further submission to the court, this matter is now ripe for disposition.

## DISCUSSION

Defendant's motion does not involve any factual dispute but instead raises the issue of whether defendant Rooney is entitled to

judgment as a matter of law on certain claims raised by plaintiffs. Specifically, defendant argues that (1) plaintiffs' strict liability count (count IV) must be dismissed because a house is not a "product" for purposes of Restatement (Second) of Torts 402A (1965)[1] and (2) that plaintiffs' counts involving alleged breaches of an implied warranty of habitability (count V) and an implied warranty of reasonably workmanlike construction (count VII) must be dismissed because Pennsylvania's Uniform Commercial Code does not apply to contracts for construction of a residential home. These arguments will be addressed in turn.

The substantive law of Pennsylvania applies to this diversity action. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Pennsylvania Supreme Court has not specifically addressed the issue of whether a building constitutes a "product" within the meaning of section 402A. There is, however, dicta from the Pennsylvania Supreme Court that bears on the issue and two (2) county court opinions that rely on the dicta. Two conflicting Superior Court decisions must also be considered. Thus, as summarized by the Third Circuit Court of Appeals, this court's task is as follows:

> In the absence of an authoritative pronouncement from the state's highest court, the task of a federal tribunal is to predict how that court would rule. To make this prognostication, we are not inflexibly confined by dicta or by lower state court decisions, although we should look to such statements as indicia of how the state's highest court might decide.... The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and

the decisions of other courts may also inform our analysis. In addition, we may consult treatises, the Restatement, and the works of scholarly commentators.

*See Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1167 (3d Cir.1981) (citations omitted); *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 662 (3d Cir.1980), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed. 2d 237 (1980).

The Supreme Court's only pronouncement on this subject is *Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 382 A.2d 715 (1978). In *Freezer Storage,* the court was called upon to decide the constitutionality of a statute limiting the liability of persons performing construction improvements to property. In discussing the rationale behind adjusting time periods of liability for acts performed according to the substantive scope of the liability involved, the court stated as follows:

> The scope of liability of the class of builders differs significantly from that of the class of owners. First, the class of persons to whom builders may be liable is larger than the class to which owners may be liable. Landowners may be liable to others who come onto their land. Builders, however, may be liable both to the landowners and to others who use the land. Second, a builder may be liable for construction defects under various legal theories—contract, warranty, negligence, *and perhaps strict liability in tort.*[3]

*Id.* at 276, 382 A.2d at 718 (emphasis added). In the footnote, the court directs the reader to compare section 402A with Re-

---

**1.** (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
  (a) the seller is engaged in the business of selling such a product, and
  (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although
  (a) the seller has exercised all possible care in the preparation and sale of his product, and
  (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
Restatement (Second) of Torts § 402A (1965).

statement (Second) of Torts § 385.[2] Thus, at the very least, the Pennsylvania Supreme Court has recognized the possibility of extending strict liability to builders for construction defects.

Previously, in *Cox v. Shaffer*, 223 Pa.Super. 429, 302 A.2d 456 (1973), the Pennsylvania Superior Court held that a silo constructed in place on the land of another is not a "product" within the meaning of section 402A. In so holding, the court stated as follows:

> as a study of the language of Section 402A reveals, that section applies only to "One who sells any product in a defective condition." A silo constructed in place on the employer's land is not a sale of a "product." We find the section inapplicable by virtue of its very clear language and find no need to resort to any extended reasoning to support our determination that a building so constructed on the site is not a product within the intent and meaning of Section 402A.

*Id.* at 431, 302 A.2d at 457.

The Superior Court, however, recently returned to the issue in *Lupinski v. Heritage Homes, Ltd.*, 369 Pa.Super. 488, 535 A.2d 656 (1988), an action brought by homeowners against a builder to recover damages caused by the use of insect-infected lumber. The court analyzed the strict liability doctrine of section 402A and concluded that economic damage to the marketability of plaintiffs' house was not recoverable under section 402A. The court then added the following footnote:

> We are mindful that there exists case law in Pennsylvania which *suggests* that a building is not a "product" for § 402A purposes. *See Cox v. Shaffer*, 223 Pa. Super. 429, 302 A.2d 456 (1973) (a silo found not to be a product within the intent and meaning of § 402A). However, we need not decide that question as the Lupinskis have failed to present evi-

dence of damages recoverable under any circumstances within the realm of § 402A actions.

*Id.* at 493 n. 3, 535 A.2d at 658 n. 3 (emphasis added).

Finally, two Pennsylvania trial courts have relied on the dicta in *Freezer Storage* to squarely hold that a building may be considered a product for strict liability purposes. *See Schmidt v. James Lewis Corp.*, 33 Ches.Co.Rep. 409, 410–412 (1985) ("after considering the evolution of Pennsylvania case law on the subject, especially the persuasive dictum in *Freezer Storage*, we are inclined to allow the Plaintiffs ... to proceed against the defendants on the theory of strict liability under ... § 402A"); *Sports Management Group, Inc. v. Allensville Planing Mill, Inc.*, 16 Pa.D. & C.3d 760, 767–769 (C.P. of Mifflin County 1980) ("Given [the dicta in *Freezer Storage*], the possible reading of section 385 of the Restatement and the possible expansion of the term "product" as employed in 402A, at least some doubt is cast upon the continued validity of *Cox v. Shaffer*, supra"). In so holding, both courts limited *Cox v. Shaffer* to its facts and cited with approval cases from other jurisdictions that have permitted a similar cause of action. *See Schmidt v. James Lewis Corp.*, 33 Ches.Co.Rep. at 411, 412 & n. 2; *Sports Management Group, Inc. v. Allensville Planing Mill, Inc.*, 16 Pa.D. & C.3d at 768 & n. 4.

■ While these authorities are far from conclusive, the court believes they indicate that, if faced with the issue, the Pennsylvania Supreme Court would hold that builders may be held strictly liable under section 402A. The policies behind section 402A are clearly consistent with those behind the Pennsylvania courts recent expansion of builder liability in the area of implied warranties. *Compare* Restatement (Second) of Torts § 402A comment c *with Groff v.*

---

**2.** Section 385 reads as follows:

One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has

been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.

Restatement (Second) of Torts § 385 (1965).

*Pete Kingsley Building, Inc.*, 374 Pa.Super. 377, 543 A.2d 128, 131–133 (1988). As noted by the court in *Schmidt v. James Lewis Corp., supra*, numerous decisions from other jurisdictions support the conclusion reached here. *See Schmidt*, 33 Ches. Co.Rep. at 412 n. 2 and authorities cited therein; *see also Annotation, Recovery, Under Strict Liability in Tort, for Injury or Damage Caused by Defects in Building or Land*, 25 A.L.R.4th 351 (1983 & Supp. 1987). Thus, defendant's first argument must be dismissed.

 Defendant next argues that plaintiffs' counts involving alleged breaches of an implied warranty of habitability (count V) and an implied warranty of workmanlike construction (count VII) must be dismissed because Pennsylvania's Uniform Commercial Code does not apply to contracts for construction of a residential unit. The court cannot agree. As stated in *Jones & Laughlin Steel Corp. v. Johns–Manville Sales Corp.*, 453 F.Supp. 527 (W.D.Pa. 1978), *aff'd in relevant part*, 626 F.2d 280 (3d Cir.1980),

> [W]hile we agree ... that construction contracts are not governed by the U.C.C., the implied warranty of fitness for purpose is not an invention of the U.C.C. or its predecessor the Uniform Sales Act. Rather, it is an outgrowth of the common sense and common law recognition that such a warranty may be implied under certain circumstances. Whether or not the U.C.C. applies is not decisive.

*Id.* at 538; *see also Hoffman v. Misericordia Hospital of Philadelphia*, 439 Pa. 501, 506–507, 267 A.2d 867, 869 (1970) (the enactment of the U.C.C. "did not intend to impede the parallel development of warranties implied in law in non-sales situations"); 13 Pa.C.S.A. § 2313 comment 2 ("Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract"). Thus, the Pennsylvania courts have recognized the existence of implied warranties of habitability and reasonably workmanlike construction upon executing a contract for the construction of a residential dwelling since at least 1972. *See Elderkin v. Gaster*, 447 Pa. 118, 288 A.2d 771 (1972); *see also Groff v. Pete Kingsley Building, Inc.*, 543 A.2d 128 (Pa. Super.1988); *Ecksel v. Orleans Construction Co.*, 360 Pa.Super. 119, 519 A.2d 1021 (1987); *Tyus v. Resta*, 328 Pa.Super. 11, 476 A.2d 427 (1984). Since plaintiffs' claims do not depend upon the existence of a contract of sale, defendant's second argument must also be rejected and its motion for partial summary judgment will be denied.

An appropriate Order will enter.