Repasky v. Jeld-Wen Inc.

C.P. of Adams County, no. 06-S-717.

*Paul W. Minnich,* for plaintiffs.
*Wayne W. Ringeisen* and *Jeffrey S. Adler,* for defendants.

BIGHAM, *J.,* December 29, 2006—

## STATEMENT OF FACTS

In 1992, John and Christine Repasky (plaintiffs) constructed an addition to their home in Mt. Pleasant Township, Pennsylvania. The addition was built to house a pool and a gymnasium. The exterior of the addition was constructed of stone veneer interspersed with an Exterior Insulation and Finish System (EIFS) which was manufactured by STO Corp. and contained 18 exterior window and door units manufactured by Jeld-Wen Inc. and Pozzi Window Company. In 2004, plaintiffs noticed bubbling and cracking in the EIFS system around the windows and discovered extensive decay of the system. Plaintiffs also discovered that the frames of virtually all of the windows, window sills, and doors were rotted. Plaintiffs have had to completely replace the EIFS system as well as the windows and doors.

Plaintiffs commenced this action against STO, Jeld-Wen and Pozzi on June 28, 2006 by filing a writ of summons. Defendant Jeld-Wen filed a rule to file complaint on July 24, 2006 and defendant STO filed a rule to file complaint on August 11, 2006. Plaintiffs filed their complaint on September 11, 2006. STO filed preliminary objections to plaintiffs' complaint on September 27, 2006

and filed their supporting brief concurrently therewith. Plaintiffs filed an amended complaint on October 13, 2006. On November 2, 2006, Jeld-Wen and Pozzi filed preliminary objections to plaintiffs' amended complaint outlining the following objections:

"(1) applying either of the two possible limited warranties, Jeld-Wen and Pozzi properly and expressly excluded the implied warranties of merchantability and fitness for a particular purpose;

"(2) causes of action sounding in implied warranties and express warranties are time barred;

"(3) plaintiffs' claims under the theories of negligence and strict liability are barred by the economic loss doctrine; and

"(4) causes of action sounding in negligence and strict liability are time barred."

On November 6, 2006, STO filed preliminary objections to plaintiffs' amended complaint and as well as their supporting brief outlining their objections:

"(1) plaintiffs' tort based claims are barred by the economic loss doctrine where the only damages claimed are to the product itself and do not involve physical injury; and

"(2) plaintiffs' claim for breach of implied warranty is time barred."

A court order was entered on November 8, 2006 directing plaintiffs to file a responsive brief by November 21, 2006 and scheduling oral argument for December 8, 2006 at 8:30 a.m. Plaintiffs' counsel requested an extension for filing responsive brief and with all parties in agreement, plaintiffs were permitted to file their responsive brief on November 30, 2006. STO filed a reply brief to plaintiffs'

response on December 6, 2006. Jeld-Wen filed a reply brief to plaintiffs' response on December 18, 2006.

## LEGAL DISCUSSION

### Economic Loss Doctrine

STO and Jeld-Wen (defendants) argue that plaintiffs cannot recover in tort because the damages are barred by the economic loss doctrine.

Plaintiffs claim that neither defendant has taken their analysis of the economic loss doctrine and its exceptions to the extent necessary to reach an appropriate determination concerning the preliminary objections they now raise. We disagree.

It is well-settled in Pennsylvania that the economic loss doctrine bars recovery in tort where there is no physical injury and the only damages are to the product itself. "The general rule of law is that economic losses may not be recovered in tort (negligence) absent physical injury or [other] property damage." *Spivak v. Berks Ridge Corporation,* 402 Pa. Super. 73, 78, 586 A.2d 402, 405 (1991). The economic loss doctrine bars recovery for the plaintiff when a claim is brought in tort (strict liability or negligence) but no physical injury exists, and the only damage is to the product itself. *New York State Electric & Gas Corporation v. Westinghouse Electric Corporation,* 387 Pa. Super. 537, 549, 564 A.2d 919, 925-26 (1989).

"In our opinion in the companion to this case, *REM Coal Company Inc. v. Clark Equipment Company,* this court has held that economic losses are not recoverable in negligence or strict liability in a product liability action." *Id.* at 550, 564 A.2d at 925.

"[W]e adopt the standard unanimously adopted by the Supreme Court in *East River Steamship Corp. v. Transamerica Delaval Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), under which recovery in tort is barred in product liability actions between commercial enterprises where the only damage alleged is to the product itself, whether or not the defect posed a risk of other damage or injury or manifested itself in a sudden and calamitous occurrence." *REM Coal Company Inc. v. Clark Equipment Company,* 386 Pa. Super. 401, 409, 563 A.2d 128, 132 (1989).

"A manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself." *East River Steamship Corp. v. Transamerica Delaval Inc.,* 476 U.S. 858, 871 (1986). This rule has been further expanded by the court in *Jones* to include consumers. The economic loss doctrine applies to consumers as well as between commercial enterprises. *Jones v. General Motors Corp.,* 428 Pa. Super. 544, 546, 631 A.2d 665, 666 (1993).

The Commonwealth's version of the doctrine precludes recovery for economic losses in a negligence action *if the only damage sustained by the plaintiff/purchaser is damage to the product itself, but no other property damage* or personal injury resulted. *REM Coal Company Inc. v. Clark Equipment Company,* 386 Pa. Super. 401, 413, 563 A.2d 128, 134 (1989). (emphasis added) Therefore, the outcome here turns on what is considered to be the "product itself"?

Defendants claim that the loss suffered was to the product itself and therefore recovery for that loss is not permissible. Defendants argue that a "product" is considered a finished product and not the individual com-

ponents of which it is comprised, and that when an allegedly defective component is incorporated into the final integrated product it is not damage to "other property" under the economic loss doctrine.

Plaintiffs argue defendants have not analyzed this claim properly under the economic loss doctrine and that a proper analysis would indicate the injuries suffered were to "other property." Plaintiffs argue that because their claims fall under the "other property" exception to the economic loss doctrine, recovery would not be barred.

Plaintiffs assert this court should apply the rule from *Saratoga Fishing Co.,* 520 U.S. 875 (S.Ct. 1987) where it was found that a tort plaintiff could recover for physical damage the product causes to "other property"; equipment added to a product *after* the manufacturer or distributor selling in the initial distribution chain has sold the product to an initial user is not part of the product itself that caused physical harm, but rather constitutes "other property." *Saratoga Fishing Co.,* at 875. The court's points of inquiry were identified as being whether or not equipment added by the initial user after the first sale constitutes part of the "product itself" or whether it constitutes "other property." *Id.* at 877. The court held that the *addition* of property to the product sold to the initial user by the manufacturer or distributor constituted "other property" and that therefore the normal tort rules permitted recovery. *Id.* (emphasis added) "When a manufacturer places an item in the stream of commerce by selling it to an initial user, that item is the 'product itself' under *East River.* Items *added* to the product by the initial user are therefore 'other property,' and the initial user's sale of product to a subsequent user

does not change these characterizations." *Id.* at 879. (emphasis added)

This court does not find the rule in *Saratoga Fishing Co.* applicable to this case. The products at issue here are not additions to the completed building but instead are components of the completed building. The separate products (*i.e.,* windows, doors, EIFS) were used in combination with one another to form the building. Therefore the "finished" product is considered to be the entire building inclusive of its component parts. Actually, the court in *Saratoga Fishing Co.* points this out.

The Supreme Court finds that components that are part of a product when it is initially sold do not fall within the "other property" exception:

"Since all but the very simplest of machines have component parts, [a contrary] holding would require a finding of 'property damage' in virtually every case where a product damages itself. Such a holding would eliminate the distinction between warranty and strict products liability. Our holding here, however, does not affect this rule." *Saratoga Fishing Co.* at 883. Citing *East River,* 476 U.S. at 867 (quoting *Northern Power & Engineering Corp. v. Caterpillar Tractor Co.,* 623 P.2d 324, 330 (Alaska 1981).

To determine what constitutes damages to "other property" for purposes of the economic loss doctrine, the "product" is considered to be the finished product rather than the individual components of which it is comprised. *King v. Hilton-Davis,* 855 F.2d 1047, 1052 (3d Cir. 1988). When a component of a structure is alleged to be defective, it is not considered "other property," and the economic loss doctrine will bar the plaintiff from recovering under a theory in tort. *Lupinski v. Heritage Homes, Ltd.,*

369 Pa. Super. 488, 492, 535 A.2d 656, 657-58 (1988)[1] (Damages to house allegedly caused by bug infested lumber that was integrated into the house was not damage to "other property"). *Id.*

Pennsylvania courts have recognized that when damages to certain building components are alleged to have been caused by other components in the same residential structure, the damage is not considered to be "other property" under the economic loss doctrine. *Atkins v. Dryvit Sys. Inc.,* no. 99-10131 (C.C.P. Jan. 31, 2003) (Chester Cty.) (slip-op).

Damage to building facade caused by allegedly defective exterior wall coating was not damage to "other" property, thereby limiting plaintiff's recovery to contract-based theories. *Wellsboro Hotel Co. v. Prins,* 894 F. Supp. 170, 175 (E.D. Pa. 1995). Damage to building allegedly caused by leaky doors was not damage to "other property" under economic loss rule. *Longport Ocean Plaza Condo. Inc. v. Robert Cato & Assocs. Inc.,* 2002 WL 436742 at 5 (E.D. Pa. Mar. 18, 2002).

"In determining whether a product has injured only itself in an action in which a component part manufactured by a defendant causes injury to the product of which it is a part, a court should look not to the product manufactured by the defendant, but to the product purchased by the plaintiff . . . . Therefore, to the extent products used in construction prove defective and result in harm

1. Plaintiff points out that *Lupinski* relies heavily on precedent that was set out in *Industrial Uniform Rental Company Inc. v. International Harvester Co.,* 317 Pa. Super. 65, 463 A.2d 1085 (1983) that was reversed by *REM Coal Co.* However, Defendants argue that the court in *REM Coal Co.* in overruling *Industrial Uniform* expanded the rule by adopting the standard that was set forth in *East River* and therefore the outcome of *Lupinski* would not change.

to a building itself, those damages should not be considered damage to 'other property.'" *Id.*

The court held that a claim for damages to "other property" where defective components of a generator allegedly caused damages to other parts of the generator was clearly without merit. *New York State Electric & Gas Corporation v. Westinghouse Electric Corporation,* 387 Pa. Super. 537, 550, 564 A.2d 919, 925 (1989).

The fundamental rationale behind the economic loss doctrine is that the law of contracts and not of tort provides the appropriate remedy for plaintiffs seeking to recover for the alleged failure of a product to perform as expected. The purpose of the economic loss doctrine, as adopted in Pennsylvania, is "maintaining the separate spheres of the law of contract and tort." *New York State Electric & Gas Corporation* at 550, 564 A.2d at 925. Therefore, because the court finds the building to be the "finished" product, the claims in tort are barred by the economic loss doctrine. Defendants' preliminary objection under the economic loss doctrine is therefore sustained.

### Torts

Jeld-Wen also objected to the tort claims asserting they are barred by the statute of limitations. However, because the objection under the economic loss doctrine has been sustained and the tort claims will be barred under that theory, the court sees no need to address this objection.

### *Statute of Limitations*

### Implied Warranty/Express Warranty

"An action for breach of any contract for the sale of goods must be commenced within four years after the cause of action has accrued." 13 Pa.C.S. §2725(a).

Defendants argue that if a breach actually occurred it would have occurred when the pool house was originally constructed in 1992. A cause of action accrues for statute of limitations purposes "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." 13 Pa.C.S. §2725(b). Defendants argue that even if plaintiffs did not discover a breach until 2004, the statute of limitations period would have already expired.

There is no "discovery rule" with respect to a breach of implied warranty claims under Pennsylvania's Commercial Code that would toll the running of the four-year statute of limitations period beyond the date of breach. Breach occurs, if at all, (and the four years statute of limitations begins to run) upon tender of delivery of the allegedly defective goods). *Northampton County Area Community College v. Dow Chemical U.S.A.,* 389 Pa. Super. 11, 27, 566 A.2d 591, 599 (1989) (tort discovery rule does not apply to breach of warranty actions). The Commercial Code expressly rejects a discovery rule similar to the one that has been developed for personal injury actions. *Patton v. Mack Trucks Inc.,* 360 Pa. Super. 1, 14, 519 A.2d 959, 966-67 (1986).

Plaintiffs concede that defendants properly and accurately cited to the statutory law applicable to the claims. However, plaintiffs argue that the rationale behind the statute is outdated, against public policy, and no longer applicable in the legal arena of the present day and age. Plaintiffs argue that in this day and age demands that records for certain types of products be kept for a period of time consistent with the typical or expected life of the product, rather than an arbitrarily selected narrow time frame of "four years." "[I]n the usual circumstances, . . . defects are apt to surface within that time period, and the

few odd situations where this is not the case, resulting in hardship to the buyer, are thought to be outweighed by the commercial benefit derived by allowing the parties to destroy records with reasonable promptness." *Nationwide Insurance Company v. General Motors Corporation,* 533 Pa. 423, 428, 625 A.2d 1172, 1174 (1993) citing to *William D. Hawkland,* Uniform Commercial Code Series §2-725:02 (1984).

Plaintiffs also assert that the statute of limitations is actually a statute of repose and that this could potentially leave the plaintiffs with no means of recovery. *"Thus, in breach of warranty cases the four-year statute of limitations period is essentially a statute of repose." Nationwide* at 428, 625 A.2d at 1174-75. (emphasis added)

A statute of repose is distinguishable from a statute of limitations, in that a statute of repose limits potential liability by limiting the time during which a cause of action can arise, and cuts off a right of action after a specified time measured from delivery of a product or completion of work, regardless of the time of accrual of a cause of action or a notice of invasion of legal rights. Black's Law Dictionary, 6th edition.

Plaintiffs' arguments are interesting points that are well thought out. However, until the state legislature makes a change to the statute to reflect such an argument the law remains the same. The statute of limitations period is four years beginning at the tender of delivery of the goods. Therefore, because the building was completed in 1992, the alleged breach was discovered in 2004 and the claims were not brought until 2006, the statute of limitations period has expired and this preliminary objection will be sustained.

## Warranty of Merchantability and Fitness for a Particular Purpose

Plaintiffs argue that Jeld-Wen warranted that its windows and doors were reasonably fit for the purpose for which they were ordinarily and customarily intended and that the same were of good and merchantable quality. Plaintiffs claim that because of the significant problems that arose Jeld-Wen breached those implied warranties. Plaintiffs argue that defendants interjecting two limited warranties that "may" have been used to disclaim their implied warranties are new factual information that is beyond the averments of the complaint, and has not been the subject of any discovery yet performed in the case. Plaintiffs claim these documents are prematurely before this court and therefore should not be considered. Plaintiffs also argue that they should be given a fair opportunity to question and develop a proper discovery record relating to whether the two documents are applicable here.

Jeld-Wen argues that these implied warranties were disclaimed by their express warranties and therefore no breach could have occurred based on those implied warranties. Jeld-Wen claims that plaintiffs failed to provide a copy of the limited warranty accompanying the windows and/or door purchase when filing their first amended complaint and the complaint fails to mention the date or month of the purchase as well as the supplier thereof. Therefore, Jeld-Wen offers two standard warranties that were used in 1992, one of which would have been used in this transaction. One warranty was used from January 1, 1992 through October 2, 1992 and the other was used from October 2, 1992 through January 1, 1994.

"When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof, but if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance of the writing." Pa.R.C.P 1019(i).

Where a plaintiff avers the existence of a written agreement and relies upon it to establish his cause of action; a defendant may properly annex that agreement without creating an impermissible speaking demurrer since the agreement is a factual matter arising out of the complaint. *Martin v. PennDOT,* 124 Pa. Commw. 625, 629, 556 A.2d 969, 971 (1989). See *Satchell v. Insurance Placement Facility of Pennsylvania,* 241 Pa. Super. 287, 361 A.2d 375 (1976).

Because the defendant is using these warranties as a basis for their defense to the claimed breach action, defendants will be permitted to use their standard warranties used in 1992 to support their objection that any implied or express warranty was disclaimed.

Pennsylvania Commercial Code states, in order to exclude or modify an implied warranty of merchantability the warranty must mention merchantability, and in the case of a writing, the language must be conspicuous. This statute also addresses the issue of implied warranty of fitness and that for exclusion or modification to be valid it must be conspicuous and in a writing. 13 Pa.C.S. §2316. A term is considered conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. 13 Pa.C.S. §1201.

Under Pennsylvania law there are factors to use in considering whether a reasonable person should have

noticed a warranty disclaimer and they include: (1) the disclaimer's placement in the document; (2) the size of the disclaimer's print; and (3) whether the disclaimer was highlighted by being printed in all capital letters or in a type style or color different from the remainder of the document. *Borden Inc v. Advent Ink Company,* 701 A.2d 255, 259 (Pa. Super. 1997); citing *Hornberger v. General Motors Corporation,* 929 F. Supp. 884, 889 (E.D. Pa. 1996); see also, *Beck-Hummel v. Ski Shawnee Inc.,* 902 A.2d 1266, 1274 (Pa. Super. 2006).

Here, the warranties offered are both short in length and have the disclaimer set in a separate paragraph on the warranties' first pages. The disclaimers are set in a bigger size than the other print of the document and were printed in all capital letters. They both expressly mention merchantability and fitness for a particular purpose. Therefore, applying the factors in *Borden Inc.,* a reasonable person should have noticed the warranty disclaimer. Because the implied warranties of merchantability and fitness for a particular purpose both mentioned merchantability and fitness, both were in writing with the language of a conspicuous nature, they have been properly disclaimed in accordance with 13 Pa.C.S. §2316(b).

Accordingly, the attached order is entered.

## ORDER

And now, December 29, 2006, in consideration of defendants Jeld-Wen Inc. and STO Corp.'s preliminary objections to plaintiffs' amended complaint and replies by defendants Jeld-Wen Inc. and STO Corp., it is ordered that the preliminary objections are sustained. Because these objections have been sustained Counts 1, 2, 3, 4, 5 and 7 of the amended complaint are dismissed. Count

6 of the complaint remains. The parties are directed to proceed in accordance with the applicable Pennsylvania Rules of Civil Procedure.