543 So.2d 671 (1989)
LLOYD WOOD COAL COMPANY and Aetna Insurance Company
v.
CLARK EQUIPMENT COMPANY, et al.
86-1282.
Supreme Court of Alabama.
April 7, 1989.
Stanley A. Cash of Huie, Fernambucq & Stewart, Birmingham, for appellants.
Charles L. Robinson, James C. Barton, Jr. and Hollinger F. Barnard of Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, for appellees.
*672 ADAMS, Justice.
This is an appeal from a summary judgment in favor of the defendants, Clark Equipment Company and Aetna Insurance Company (hereinafter collectively referred to as "Clark Equipment Company").
On February 16, 1976, the plaintiff, Lloyd Wood Coal Company ("Wood"), leased a Model 475B Michigan front-end loader from Simmons Machinery Company. The front-end loader was manufactured by Clark Equipment Company and, pursuant to the lease agreement with Simmons, Wood was required to take out fire insurance on the machinery. Aetna Insurance Company, the other plaintiff in this case, issued the insurance policy to Wood.
A few months after Wood leased the equipment, the right hydraulic pump hose had to be replaced. An employee of Simmons Machinery Company replaced the hose; however, the replacement hose was approximately 23 inches longer than the original hose. This hose ruptured in June 1976, causing a fire that resulted in substantial damage to the machinery. No one was injured and no other property was damaged. Aetna, pursuant to the insurance policy, issued a check to Simmons Machinery in the amount of $253,477.56.
This is a claim solely for damage to the product itself, the front-end loader, which was for commercial use, as opposed to consumer use. As stated above, there is no claim for personal injury or for damage to any property other than the front-end loader itself.
The plaintiffs claim that the equipment was negligently designed and they argue that a cause of action arises in tort (under theories of negligence, wantonness, strict liability, or the Alabama Extended Manufacturer's Liability Doctrine (AEMLD)) when a commercial product malfunctions or is defective and the malfunction or defect results in damage only to the product itself. We disagree, and we affirm the judgment of the trial court.
While there is no case law directly on point in this state, we are persuaded by the rationale expressed in the admiralty case of East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In East River, the United States Supreme Court considered the very issue before us today: "... whether injury to a product itself is the kind of harm that should be protected by products liability or left entirely to the law of contracts." East River, supra, 476 U.S. at 859, 106 S.Ct. at 2296. That Court recognized that different states have resolved this issue differently and, in his opinion, Justice Blackmun set forth an explanation of the three approaches as follows:
"The intriguing question whether injury to a product itself may be brought in tort has spawned a variety of answers. At one end of the spectrum, the case that created the majority land-based approach, Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965) (defective truck), held that preserving a proper role for the law of warranty precludes imposing tort liability if a defective product causes purely monetary harm. See also Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp., 626 F.2d 280, 287 and n. 13 (CA3 1980) (citing cases).
"At the other end of the spectrum is the minority land-based approach, whose progenitor, Santor v. A and M Karagheusian, Inc., 44 N.J. 52, 66-67, 207 A.2d 305, 312-313 (1965) (marred carpeting), held that a manufacturer's duty to make nondefective products encompassed injury to the product itself, whether or not the defect created an unreasonable risk of harm. See also LaCrosse v. Schubert, 72 Wis.2d 38, 44-45, 240 N.W.2d 124, 127-128 (1976). The courts adopting this approach, including the majority of the Courts of Appeals sitting in admiralty that have considered the issue, e.g., Emerson G.M. Diesel, Inc. v. Alaskan Enterprise, 732 F.2d 1468 (CA9 1984), find that the safety and insurance rationales behind strict liability apply equally where the losses are purely economic. These courts reject the Seely approach because they find it arbitrary that economic losses are recoverable if a plaintiff suffers bodily injury or property *673 damage, but not if a product injures itself. They also find no inherent difference between economic loss and personal injury or property damage, because all are proximately caused by the defendant's conduct. Further, they believe recovery for economic loss would not lead to unlimited liability because they think a manufacturer can predict and insure against product failure. See Emerson G.M. Diesel, Inc. v. Alaskan Enterprise, 732 F.2d, at 1474.
"Between the two poles fall a number of cases that would permit a products-liability action under certain circumstances when a product injures only itself. These cases attempt to differentiate between `the disappointed users ... and the endangered ones,' Russell v. Ford Motor Co., 281 Or. 587, 595, 575 P.2d 1383, 1387 (1978), and permit only the latter to sue in tort. The determination has been said to turn on the nature of the defect, the type of risk, and the manner in which the injury arose. See Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., 652 F.2d 1165, 1173 (CA3 1981) (relied on by the Court of Appeals in this case). The Alaska Supreme Court allows a tort action if the defective product creates a situation potentially dangerous to persons or other property, and loss occurs as a proximate result of that danger and under dangerous circumstances. Northern Power & Engineering Corp. v. Caterpillar Tractor Co., 623 P.2d 324, 329 [Alaska] (1981)."
Id., 476 U.S. at 868-70, 106 S.Ct. at 2300-02.
The Supreme Court adopted the majority approach, thereby rejecting the minority approach, which it felt would result in unrealistic damages and too much overlap between the law of contract and products liability, id., 476 U.S. at 870, 106 S.Ct. at 2302, as well as the intermediate approaches, which "are too indeterminate to enable manufacturers easily to structure their business behavior." Id.
"[W]e adopt an approach similar to Seely and hold that a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself.
"`The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products.' Seely v. White Motor Co., 63 Cal.2d, at 18, 45 Cal.Rptr., at 23, 403 P.2d, at 151. When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong.
"The tort concern with safety is reduced when an injury is only to the product itself. When a person is injured, the `cost of an injury and the loss of time or health may be an overwhelming misfortune,' and one the person is not prepared to meet. Escola v. Coca Cola Bottling Co., 24 Cal.2d [453], at 462, 150 P.2d [436], at 441 (concurring opinion). In contrast, when a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or, as in this case, experiences increased costs in performing a service. Losses like these can be insured. See 10A Couch on Insurance §§ 42:385-42:401, 42:414-17 (2nd ed. 1982); 7 Benedict on Admiralty, Form No. 1.16.7 (7th ed. 1985); 5A Appleman, Insurance Law and Practice § 3252 (1970). Society need not presume that a customer needs special protection. The increased cost to the public that would result from holding a manufacturer liable in tort for injury to the product itself is not justified. Cf. United States v. Carroll Towing Co., 159 F.2d 169, 173 (CA2 1947).
"Damage to a product itself is most naturally understood as a warranty claim. Such damage means simply that the product has not met the customer's *674 expectations, or, in other words, that the customer has received `insufficient product value.' See J. White and R. Summers, Uniform Commercial Code 406 (2d ed. 1980). The maintenance of product value and quality is precisely the purpose of express and implied warranties. See UCC § 2-314 (implied warranty of merchantability), and § 2-315 (warranty of fitness for a particular purpose). Therefore, a claim of a nonworking product can be brought as a breach-of-warranty action. Or, if the customer prefers, it can reject the product or revoke its acceptance and sue for breach of contract. See UCC §§ 2-601, 2-608, 2-612." Id., 476 U.S. at 871-72, 106 S.Ct. at 2302-03. (Citations omitted.) (Emphasis added.)
A commentator has concisely stated the Court's holding:
"First, consequential economic loss caused by the failure of a product is more insurable by buyers than loss caused by personal injury; therefore, the increased cost of the product would not be justified. Second, parties should be free to allocate risks among themselves without the intrusion of tort liability. Third, warranty law contains an adequate remedy with necessary limitations on liability, that is, privity and remoteness, while liability in tort could subject manufacturers to damages in an indefinite amount." (Footnotes omitted.)
"Recovery of Pure Economic Loss in Product Liability Actions: An Economic Comparison of Three Legal Rules," 11 U. of Puget Sound L.Rev. 283, 293 (1987).
In the case sub judice, there was no personal injury or property damage other than to the product itself. Of course, an action in tort would have arisen had there been personal injury or damage to property other than the product itself.
"Products liability grew out of a public policy judgment that people need more protection from dangerous products than is afforded by the law of warranty. See Seely v. White Motor Co., 63 Cal.2d 9, 15 [45 Cal.Rptr. 17, 21], 403 P.2d 145, 149 (1965). It is clear, however, that if this development were allowed to progress too far, contract law would drown in a sea of tort. See G. Gilmore, The Death of Contract 87-94 (1974)."
East River, supra, 476 U.S. at 866, 106 S.Ct. at 874. We are inclined to agree with the rationale in East River and the United States Supreme Court's considerations in reaching its decision.
To the extent that our case of Joe Sartain Ford, Inc. v. American Idem. Co., 399 So.2d 281 (Ala.1981), is in conflict with this opinion, it is hereby overruled. (We do point out that in that case we were not directly presented with the issue that is before us today, although the result reached there implies that we would allow a claim such as the one in the case sub judice.)
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
JONES, J., dissents.
JONES, Justice (dissenting).
I respectfully dissent. The majority, by adopting the rationale in East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), "and the United States Supreme Court's considerations in reaching its decision" in that case, has effectively rendered remediless that class of plaintiffs who, as the result of the malfunction of a commercial product, have suffered neither personal injury nor damage to property other than to the product itself, but have either lost the product, or sustained severe damage to it. This is not only new law in Alabama, but, in my opinion, it is also bad law.
The appellants correctly assert that to be relegated to commercial law (breach of warranty) for their remedy is to be without a remedy. It is fallacious reasoning to presume that commercial law will furnish an adequate remedy for damage to the product. The rationale of East River is to the effect that sophisticated buyers and *675 sellers of commercial products, as opposed to consumer goods, are free to bargain at arm's length with respect to the warranty of the product. This is simply not true.
The manufacturer of standardized products either elects to warrant the product or not to warrant the product; and, if it warrants the product, it can limit both the quality and the quantity of that warranty as it sees fit. I have never heard of the purchaser of a piece of machinery having any input into either the nature or the extent of any warranty given by the manufacturer. Such warranties are standardized by the manufacturer and are not subject to bargained-for variances by the purchaser. There may be a rare exception, of course, where the manufacturer builds a product to the purchaser's specifications; but standardized products come with standardized warranties, if any.
Under the holding in this case, all of the competing manufacturers of standardized products could simply agree to withdraw all warranties, and the purchaser would be without any remedy whatsoever, either in contract or in tort, for damage to the product itself arising out of a defect in the product.
The law should make no distinction between classes of plaintiffs whose injury or loss results from a defective product. Indeed, I can find no valid policy reason for denying a cause of action in tort to those plaintiffs who, fortuitously, have not suffered personal injury or property damage other than damage to the defective product itself, but who, as here, are denied an action in contract because the defective product is not covered by any form of extended warranty. See Recovery for Economic Loss Under a Product Liability Theory: From the Beginning Through the Current Trend, 70 Marq.L.Rev. 321 (1987); see, also, Recovery of Economic Damages Under the Alabama Extended Manufacturers Liability Doctrine, 35 Ala.L.Rev. 329 (1984). By so holding, the majority declares that tort law has abandoned the purchaser of a commercial product purchaser by failing to impose on the manufacturer any duty to build and sell a non-defective product, thus, with respect to defects that damage or destroy the product itself, the purchaser is relegated to a breach-of-warranty remedy that, as here, may not exist. And, in my opinion, the most unfortunate consequence of all is the Court's abandonment of its own beneficent policy of holding accountable for their culpable conduct those who manufacture and sell defective products.