563 A.2d 128

**REM COAL COMPANY, INC.**

v.

**CLARK EQUIPMENT COMPANY, t/d/b/a Michigan Loaders, and Anderson Equipment Company, a Pennsylvania Corporation, Appellant,**

v.

**APEX, INC. and Bridgeville Industrial Supply, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 27, 1989.

Filed Aug. 2, 1989.

Arthur R. Gorr, Pittsburgh, for appellant.

Dennis A. Watson, Pittsburgh, for REM Coal, appellee.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, McEWEN, OLSZEWSKI, BECK, TAMILIA, POPOVICH and JOHNSON, JJ.

BECK, Judge:

This case presents the question of whether purely economic losses are recoverable in a product liability action between commercial enterprises and sounding in negligence and/or strict liability. We hold that they are not.

The relevant facts are not in dispute. Appellee REM Coal Company owned a front-end loader used in its strip mining business. On February 25, 1982 the loader caught fire and was severely damaged. REM instituted this action against Clark Equipment Company, the manufacturer of the loader, and against Anderson Equipment Company, the seller of the loader. Appellant Anderson later joined Apex, Inc., the manufacturer of the fire suppression system on the loader, and Bridgeville Industrial Supply, the seller of the fire suppression system.

REM's complaint pleaded three theories: negligence, strict liability and breach of warranty. All parties concede that the complaint alleged only economic losses, i.e., the loss of the front-end loader itself. No personal injuries or damage to REM Coal's property other than the loader itself were alleged.

At the close of the pleadings, appellants Clark and Anderson moved for summary judgment. On November 17, 1987 the trial court granted summary judgment against REM on the breach of warranty claim, holding that it was barred by the statute of limitations, but denied summary

judgment on the negligence and strict liability claims.[1] The trial court then certified the denial of summary judgment on the tort claims for immediate appeal, stating that the denial involved a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order would materially advance the ultimate termination of the matter. Permission to appeal was granted. Pa.R.A.P. 1301 et seq.

Summary judgment is appropriate when two basic requirements are fulfilled. There must be no genuine issue as to any material fact and the moving party must be entitled to judgment as a matter of law. Pa.R.C.P. 1035(b); *Washington Federal Savings & Loan Assn. v. Stein*, 357 Pa.Super. 286, 515 A.2d 980 (1986). Instantly, we need only determine whether the appellants have fulfilled the second requirement. Since all parties concede the material facts, our inquiry is only whether appellants are entitled to judgment as a matter of law.

At issue is the appropriateness of permitting recovery in tort where a product malfunctions because of an alleged defect in the product, causing damage to the product itself and consequential damages in the nature of costs of repair or replacement or lost profits, but the malfunction causes no personal injury and no injury to any other property of the plaintiff. Obviously, the question is not whether a plaintiff in such a case is entitled to a recovery at all, but rather whether a cause of action in tort, as opposed to one sounding solely in contract, is an appropriate vehicle for obtaining such a recovery.

Beginning in 1965 with the decision of the California Supreme Court in *Seely v. White Motor Co.*, 63 Cal.2d 9, 403 P.2d 145, 45 Cal.Rptr. 17 (1965), the national trend has increasingly classified cases of this nature as sounding purely in contract. *See, e.g., Lloyd Wood Coal Co. v. Clark Equipment Co.*, 543 So.2d 671 (Ala.1989); *Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159 (Minn.1981).

---

1. REM Coal has not appealed the trial court's order regarding the warranty claim.

The basic rationale employed by courts that have followed this trend is that the goals of tort theories of recovery are not implicated in a product malfunction case involving only economic losses. A contract action, on the other hand, is perfectly suited to providing an adequate remedy for such losses and recognizes the parties' ability to structure their relative liabilities and expectations regarding the product's performance by setting the terms of their contractual bargain.

The public policy that spawned tort recovery in the product liability context was a desire to provide protection of the public from unsafe products beyond that provided by contract law. Tort product liability theories impose responsibility on the supplier of a defective product whenever it causes personal injury or damage to other property because this is deemed to be the best way to allocate the risk of unsafe products and to encourage safer manufacture and design. Where a product malfunctions in a manner that does not cause damage outside of the product itself, many courts have found that this public policy is not involved because contract theories such as breach of warranty are specifically aimed at and perfectly suited to providing complete redress in cases involving such economic losses. All of such losses are based upon and flow from the purchaser's loss of the benefit of his bargain and his disappointed expectations as to the product he purchased. Thus, the harm sought to be redressed is precisely that which a warranty action does redress. *See Seely, supra; East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

This issue has had a lengthy history, not only in decisions of courts across the country, but also in the decisions of this court and of the federal courts sitting in Pennsylvania. We begin with the pertinent decisions by two panels of this court: *Industrial Uniform Rental Co., Inc. v. International Harvester Co.*, 317 Pa.Super. 65, 463 A.2d 1085 (1983), and *Johnson v. General Motors Corp.*, 349 Pa.Super. 147, 502 A.2d 1317 (1986), *allo. denied*, 514 Pa. 639, 523

A.2d 346 (1987).[2] In *Industrial Uniform*, the purchaser of certain trucks brought a Section 402A strict liability action against the manufacturer of the trucks. The damages alleged were the costs of repairing cracks in the frames of the trucks and the diminution of value in the trucks as a result of these structural deficiencies. The trial court had granted summary judgment for defendant on the ground that these damages were purely economic losses not appropriately recoverable in strict product liability.

On appeal, this court began with a review of the competing views on this issue. The seminal case representing the view that such damages were not recoverable was *Seely, supra*. The court quoted with approval from the *Seely* court's explanation of the distinction between tort and contract remedies:

The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that

**2.** We begin our analysis of existing precedent with decisions of this court because the Supreme Court of Pennsylvania has not decided this question. In fact, we have located only one reference to the issue in Supreme Court precedent and that is found in dicta contained in a footnote to the opinion in *Kassab v. Central Soya*, 432 Pa. 217, 231 n. 7, 246 A.2d 848, 854 n. 7 (1968).

Although *Kassab* involved a breach of warranty action only, the court appended a footnote to its opinion in which it posed a hypothetical situation where a consumer of a gas range was injured when the range exploded. The court hypothesized that the range itself and the consumer's kitchen were also damaged and stated that it saw no reason for excluding recovery of the damage to the range, the product itself, in a strict liability action. This statement of dicta was made at the very inception of strict liability law in Pennsylvania and in the context of a hypothetical situation, highly distinguishable from the instant case. Thus, we do not regard it as in any way indicative of the views of our present Supreme Court on the issue we decide today.

create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone ... The Restatement of Torts similarly limits strict liability to physical harm to person or property.

*Industrial Uniform,* 317 Pa.Super. at 71, 463 A.2d at 1088 (quoting *Seely,* 63 Cal.2d at 18, 403 P.2d at 151, 45 Cal.Rptr. at 23).

In contrast, the *Industrial Uniform* court noted the divergent view of the Supreme Court of New Jersey expressed in *Santor v. A. & M. Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305 (1965), where the sole alleged damages were economic losses, i.e., a decrease in the value of defective carpeting purchased by plaintiff from the defendant manufacturer. In *Santor,* the court held that strict liability recovery was permissible even in a case involving purely economic loss because the manufacturer must bear all risks associated with placing defective products on the market, including the risk that the product itself does not perform up to the purchaser's expectations. *Id.*

Having set forth these basic and diverging views, the *Industrial Uniform* court then looked to the decision of the Court of Appeals for the Third Circuit in *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165 (3d Cir.1981), in which the Third Circuit had predicted Pennsylvania law on this issue. In *Pennsylvania Glass Sand,* the Third Circuit opined that the Pennsylvania Supreme Court, if confronted with this issue, would adopt an intermediary position which generally banned recovery for

economic loss in tort, but which allowed such recovery where the product posed a risk of injury to the person or other property of the plaintiff. The court proposed a case-by-case analysis focusing on the nature of the defect, the type of risk posed by the defect, and the manner in which the damages occurred. The rationale underlying this view was the Third Circuit's perception of a relevant distinction between *pure* economic loss, i.e. damages resulting from impaired quality of the product which are properly redressed in a warranty action, and economic loss occasioned by dangerously defective products. The Third Circuit opined that the latter is most appropriately addressed by tort product liability theories. 652 F.2d at 1173–74. Since the defect alleged in *Pennsylvania Glass Sand* was the lack of a fire suppression system on a front-end loader, and the damage to the loader occurred as a result of a sudden and calamitous fire that spread over the loader, the Third Circuit held that the alleged defect was a dangerous one and that plaintiff did have a cause of action in tort.

After consideration of the three views summarized above, the *Industrial Uniform* court formulated a rule that closely parallels the *Pennsylvania Glass Sand* position, as follows:

> In an action between commercial enterprises, where defective design, manufacture and sale of a product is alleged, where there is nothing in the record to indicate that the defect is dangerous to persons or to property, and where the purported defect results in progressive deterioration of the product itself, the buyer's cause of action for its economic losses against the seller is in breach of warranty under the U.C.C.

*Industrial Uniform*, 317 Pa.Super. at 79–80, 463 A.2d at 1093. Applying this rule to the facts under review, the *Industrial Uniform* court found that plaintiff had not stated a cause of action in tort because plaintiff alleged only a non-dangerous defect and a gradual deterioration of the product not involving any calamitous event. *Id.*

The decision in *Industrial Uniform* was shortly followed by *Johnson v. General Motors Corp.*, 349 Pa.Super. 147, 502 A.2d 1317 (1986), *allo. denied*, 514 Pa. 639, 523 A.2d 346 (1987). In *Johnson*, the plaintiff class alleged that certain cars manufactured by defendant had defective transmissions that wore out prematurely. Plaintiffs sought recovery in both breach of warranty and negligence. The damages alleged were the costs of repairing the transmissions, as well as damages for plaintiffs' alleged exposure to a risk of personal danger and damage to other property. The *Johnson* court determined that these allegations did not state a cause of action in tort under the *Industrial Uniform* standard because plaintiffs had alleged only that the transmissions prematurely wore out. They did not allege any unexpected occurrence resulting from the defect. The court found the allegations of a risk of such a dangerous occurrence to be speculative, stating that "[t]hose cases where an unexpected occurrence did occur, thus creating a real, not a risk of, danger to person or to property, are distinguishable." *Id.* 349 Pa.Super. at 159, 502 A.2d at 1323.

The basic principles set forth in *Industrial Uniform* and *Johnson* have been consistently applied by Pennsylvania courts. For example, in *Lupinski v. Heritage Homes, Ltd.*, 369 Pa.Super. 488, 535 A.2d 656 (1988), a homeowner sought recovery in strict liability for the decrease in market value of the home due to an infestation of insects in the wood used to build the home. The court held that recovery of such purely economic losses in strict liability was barred under *Industrial Uniform* and *Johnson*. Even though the warranty provisions of the Uniform Commercial Code did not apply, the court nevertheless found the principles of *Industrial Uniform* and *Johnson* applicable because the homeowner's proper remedy was in the common law of contract. *Id.*, 369 Pa.Superior Ct. at 492, 535 A.2d at 658.

Were we to apply the law as set forth in *Industrial Uniform, Johnson* and *Pennsylvania Glass Sand*, we would likely conclude that the trial court here was correct in finding that appellee has stated a cause of action in tort.

The occurrence giving rise to appellee's damages is striking-ly similar to the occurrence involved in *Pennsylvania Glass Sand*—a sudden fire in a frontend loader, allegedly result-ing from dangerous defects in the loader and/or its fire suppression system, which ultimately caused extensive dam-age to the loader. Clearly, under the rationale of those cases, this type of event and defect would fall within the category of cases where a tort action would be appropriate.

We will not, however, cling to the standard of *Industrial Uniform, Johnson* and *Pennsylvania Glass Sand*. We find that they present an unworkable mechanism for deal-ing with this issue. Instead, we adopt the standard unani-mously adopted by the Supreme Court in *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), under which recovery in tort is barred in product liability actions between commer-cial enterprises where the only damage alleged is to the product itself, whether or not the defect posed a risk of other damage or injury or manifested itself in a sudden and calamitous occurrence.[3]

*East River* was an admiralty action arising out of alleged defects in the pressure turbines in a number of supertank-ers manufactured by defendant. Plaintiffs (charterers of the vessels) alleged that these defects had caused damage to the turbines themselves and sought recovery for the cost of repairing the turbines and loss of income. The trial court granted summary judgment to defendant on the ground that the losses alleged were not recoverable in tort and the court of appeals affirmed. *Id.* at 859–62, 106 S.Ct. at 2296–98.

In analyzing whether economic losses were recoverable in a tort product liability action, the Supreme Court looked to the three "land-based" approaches to the issue represented by *Seely, Santor* and *Pennsylvania Glass Sand.* In a unanimous decision, the Court rejected both the *Santor* view, which allows recovery in tort for all nature of econom-

---

3. Although *East River* was an admiralty case which established princi-ples of federal maritime law not binding on us, we nevertheless may and do find its analysis and conclusion persuasive.

ic losses, and the *Pennsylvania Glass Sand* view, wherein recovery is dependent on the nature of the defect and the risk it poses. The Court rejected the *Santor* view because of its concern for keeping "product liability and contract in separate spheres" and for maintaining "a realistic limitation on damages." *Id.* at 871, 106 S.Ct. at 2302. The Court also rejected the *Pennsylvania Glass Sand* view because it found that resting determinations of recoverability on the degree of risk posed by a defective product established too indeterminate a standard for manufacturers to follow in structuring their business behavior. *Id.* at 870, 106 S.Ct. at 2301. The Court further opined:

> Nor do we find persuasive a distinction that rests on the manner in which the product is injured. We realize that damage may be qualitative, occurring through gradual deterioration or internal breakage. Or it may be calamitous. But either way, since by definition no person or other property is damaged, the resulting loss is purely economic. Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of his bargain—traditionally, the core concern of contract law.

*Id.* (citations omitted).

Thus, the *East River* Court was persuaded that analyzing cases involving injury to the product alone solely under the law of contract was appropriate. The Court's reasoning basically paralleled that of other courts that have adopted this view. First, tort law's concern for the protection of the public is greatly reduced in such circumstances. Since consumers of the product can insure against the loss of the product and its use, there is no need to provide them with the special protection of tort remedies. Second, damage to the product is "most naturally understood as a warranty claim." *Id.* at 872, 106 S.Ct. at 2302. Warranties aim at maintaining product value and quality, which is all a consumer loses when the product is defective in a manner that results only in economic losses. Finally, warranty law is

suited to economic loss cases because in such cases, the parties have the opportunity to have set the terms of their agreement regarding product value and quality in advance. The manufacturer may provide limited warranties and reduce the price, or give full warranties at a higher cost. The customer has the ability to negotiate over the terms of the bargain. If the product does not perform according to the agreement, the consumer is made whole by contract damages as limited by the terms of the agreement. This limitation of liability is an entirely appropriate brake on the manufacturer's liability in a case involving only the loss of the bargained for product. *Id.* at 873–74, 106 S.Ct. at 2303–04.

We are in complete accord with this reasoning. Pennsylvania's breach of warranty law supplies a suitable framework for regulating and enforcing the expectations and obligations of the parties as to product performance. It provides a disappointed purchaser a complete remedy for loss of the product itself and of its use within the limits of the parties' contractual understandings. *See* Uniform Commercial Code, 13 Pa.Cons.Stat.Ann. §§ 2601, 2607, 2608, 2711–2720 (1984). To impose tort liability in addition would certainly erode the important distinctions between tort and contractual theories, including their differing objectives.

We also concur in the Supreme Court's rejection of the *Industrial Uniform, Johnson* and *Pennsylvania Glass Sand* standard. The standard adopted in those cases focusses attention on the nature of the risk posed by a product, despite the fact that in every case involving injury to the product alone, the risk has never materialized and the only actual harm is the type of harm that contract law was designed to redress. The proper focus is not on the type of risk, but on the actual harm for which plaintiff seeks recovery. Moreover, allowing a cause of action in tort where the nature of the risk posed by the product is the determinative factor invites and indeed forces courts to enter into a difficult line-drawing process that can only yield inconsistent results. When precisely could it be concluded that a defect posed an unreasonable risk where the

risk never materialized? How much need a plaintiff plead to establish a sufficiently non-speculative risk to avoid a demurrer? Must plaintiff establish that an accident-like event occurred in order to recover, or would the imminence of such an event, narrowly avoided, be sufficient?

We note that the Third Circuit has also re-analyzed the *Pennsylvania Glass Sand* approach in light of the *East River* decision. It did so in a case governed by Pennsylvania law and involving facts remarkably similar to those presented by the instant case. In *Aloe Coal Co. v. Clark Equipment Co.*, 816 F.2d 110 (3d Cir.), *cert. denied*, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987), the purchaser of the same type of front-end loader involved here, manufactured by the same defendant, sued the manufacturer in breach of warranty, negligence and strict liability when the loader unexpectedly caught fire and was severely damaged. No other property was damaged, nor did personal injury result from the incident. The Third Circuit reviewed *East River* and concluded "that the United States Supreme Court's analysis is so persuasive that it will be followed by Pennsylvania courts." *Id.* at 117. Thus, the Third Circuit rejected the intermediary position of *Pennsylvania Glass Sand* in favor of the bright line test enunciated in *East River*. In applying *East River* to the facts before it, the court denied recovery in tort despite the calamitous nature of the event and potentially dangerous nature of the alleged defect. *See also King v. Hilton–Davis*, 855 F.2d 1047 (3d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 839, 102 L.Ed.2d 971 (1989) (In case governed by Pennsylvania law, *East River* analysis applies to tort product liability suit by purchaser of product against manufacturer of component part of product; where only the product purchased is damaged, there is no recovery in tort product liability); *Lloyd Wood Co. v. Clark Equipment Co.*, 543 So.2d 671 (Ala. 1989) (Supreme Court of Alabama adopts *East River*).

Since we too prefer the clearer standard of *East River*, we hold that negligence and strict liability theories do not apply in an action between commercial enterprises involving a product that malfunctions where the only resulting dam-

age is to the product itself.[4] To the extent that *Industrial Uniform* and *Johnson* suggest a contrary rule, they are overruled.[5]

Applying this rule to the case *sub judice,* we conclude that REM Coal has not stated causes of action in negligence or strict liability. There are no allegations of damage outside of the loss of the product itself. REM Coal merely seeks to recover the loss of the benefit of its bargain. Thus, we reverse the trial court's denial of appellants' motions for summary judgment and remand to the trial court for entry of judgment for appellants on REM Coal's tort causes of action.

Reversed and remanded. Jurisdiction relinquished.

**4.** Since the case *sub judice* involves a dispute between commercial enterprises, as did *East River* and *Aloe Coal,* we need not and do not decide any questions regarding disputes between non-commercial parties.

**5.** We also note that in two prior Superior Court opinions, *Cornell Drilling Co. v. Ford Motor Co.,* 241 Pa.Super. 129, 359 A.2d 822 (1976), and *MacDougall v. Ford Motor Co.,* 214 Pa.Super. 384, 257 A.2d 676 (1969), the court made evidentiary rulings which permitted Section 402A actions to proceed in cases where the only loss alleged appears to have been to the product itself. Although neither opinion discusses the issue in the instant case, to the extent those opinions impliedly suggest a rule contrary to the one announced herein, they are disapproved.