**HARTFORD FIRE INSURANCE COMPANY**

v.

**HÜLS AMERICA, INC., Kay–Fries Holding, Inc., and Wirt–Vitabile Architects, P.C.**

No. 94–2651.

United States District Court, E.D. Pennsylvania.

Dec. 13, 1995.

Elliott R. Feldman, Cozen & O'Connor, Philadelphia, PA, for plaintiff.

A. Michael Pratt, Margaret A. Suender, Philadelphia, PA, Kenneth H. Zucker, Pepper, Hamilton and Scheetz, Westmont, NJ, Randi A. Schwartz, Pepper, Hamilton and Scheetz, Philadelphia, PA, for Hüls America, Inc., Kay–Fries Holding, Inc.

Glenn C. Equi, Lawrence A. Borda, Danell J. Palladine, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, PA, Kenneth H. Zucker, Westmont, NJ, for Wirt–Vitabile Architects, P.C.

*OPINION*

LOUIS H. POLLAK, District Judge.

The plaintiff in this action, Hartford Fire Insurance Company ("Hartford"), is the subrogee of Alpha Housing and Health Care, Inc. ("Alpha"), the owner of Main Line Nursing Rehabilitation Center. Hartford brought this suit against (1) Hüls America, Inc., and its division Trocal Roofing Systems, (2) Hüls'

predecessors-in-interest, Kay–Fries Holding, Inc. and Dynamit Nobel of America, Inc., and (3) Wirt–Vitabile Architects, P.C. To briefly restate the facts, the first two defendants were the manufacturers of the roof of a building owned by Alpha, while the third was an architectural firm hired by Alpha to inspect the building. After the expiration of its ten-year warranty, the roof failed. Hartford has reimbursed Alpha for its losses and now seeks to recover the costs of that reimbursement by suing the roof's manufacturers and inspectors.

In a memorandum dated July 18, 1995, I granted summary judgment in favor of the first two defendants, Hüls and Kay–Fries, after finding that the economic-loss doctrine precluded Hartford from recovering tort damages when the only claimed injury was to the roof itself. *See East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 871, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986) (applying economic-loss doctrine in admiralty). Therefore, I found that any remedy to which Hartford may have been entitled was in contract and not in tort.

■ On July 31, 1995, Hartford moved for reconsideration of the July 18 memorandum. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). A party filing a motion to reconsider must rely on at least one of the following grounds: (1) the availability of new evidence that was not available when the court granted the motion for summary judgment; (2) an intervening change in the controlling law; or (3) the need to correct an error of law or to prevent manifest injustice. *Reich v. Compton,* 834 F.Supp. 753, 755 (E.D.Pa.1993); *Emerson v. Adult Community Total Serv., Inc.,* 848 F.Supp. 44, 45 (E.D.Pa.), *aff'd,* 39 F.3d 1169 (3d Cir.1994).

Hartford relies on the third of these grounds, asserting that this court made an error of law in rejecting Hartford's claim that the post-sale duty to warn is an exception to the economic-loss doctrine. Although Hartford's arguments merit close consideration, I find them to be, ultimately, unpersuasive. Accordingly, I will deny Hartford's motion for reconsideration.

■ The July 18 memorandum found that the Pennsylvania courts would apply the economic-loss doctrine to this claim arising under Pennsylvania tort law because, as stated by the United States Supreme Court—albeit in a case arising in admiralty—"when a product injures only itself, reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong." *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 871, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986); *see also Aloe Coal Co. v. Clark Equipment Co.,* 816 F.2d 110, 119 (3d Cir.1987) (predicting that the Pennsylvania Supreme Court would follow *East River* ); *REM Coal Co. v. Clark Equipment Co.,* 386 Pa.Super. 401, 563 A.2d 128, 133 (1989) ("Since consumers of the product can insure against the loss of the product and its use, there is no need to provide them with the special protection of tort remedies."). A principal purpose of tort law is to protect persons from injury. This concern for safety is significantly reduced when the injury is only to the product itself. *East River,* 476 U.S. at 871, 106 S.Ct. at 2302. "[T]he injury suffered—the failure of the product to function properly—is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain." *Id.* at 868, 106 S.Ct. at 2300. Therefore, the economic-loss doctrine applies in cases in which the loss is purely economic and no personal injury or harm occurs. *See id.* at 871, 106 S.Ct. at 2302.

■ Comparatively few courts have addressed the question whether the economic-loss doctrine applies to tort claims based upon a post-sale duty to warn. The courts that have done so have taken two broad approaches to the question. One approach finds applicable in tort the *East River* admiralty analysis which emphasizes the nature of the harm at issue over the conduct and culpability of a defendant. These courts, therefore, conclude that post-sale duty to warn claims that assert only economic harm are

barred. *See Airport Rent–A–Car, Inc. v. Prevost Car, Inc.*, 660 So.2d 628, 632 (Fla. 1995) (in response to a certified question by the United States Court of Appeals for the Eleventh Circuit, finding that the economic-loss doctrine focuses on the nature of the injury and, therefore, that the doctrine precludes recovery in tort for economic loss due to a post-sale failure to warn); *Continental Ins. Co. v. Page Engineering Co.*, 783 P.2d 641, 650 (Wyo.1989) (denying recovery in tort for a post-sale failure to warn because "[t]he rejection of recovery for pure economic loss under theories of negligence and strict liability, however, has not been because of the absence of culpability, but because of the policy that economic loss is better adjusted by contract rules rather than tort principles.").

The second approach, typified by *McConnell v. Caterpillar Tractor Co.*, 646 F.Supp. 1520 (D.N.J.1986), emphasizes that information that comes to the knowledge of one of the parties after a transaction is not part of the "bargain" at issue in *East River*. *See McConnell*, 646 F.Supp. at 1526 ("A duty to warn of a product's defects of which the seller becomes aware goes not to the quality of the product that the buyer expects from the bargain, but to the type of conduct which tort law governs as a matter of social and public policy.") (*quoting Miller Indus. v. Caterpillar Tractor Co.*, 733 F.2d 813, 818 (11th Cir.1984)). This approach sees the intentional character of many post-sale duty to warn claims as distinguishing them from the claims for negligence or strict liability that are usually at issue in economic-loss cases. *See McConnell*, 646 F.Supp. at 1526 (holding that *East River* applied only to negligence in the manufacturing process and not to post-sale duties).[1]

Although both approaches carry considerable weight, this court is of the opinion that the Pennsylvania Supreme Court would find,

on the present facts, that the economic-loss doctrine applied. The Pennsylvania courts which have held that the economic-loss doctrine is applicable in the Commonwealth have not directly addressed the doctrine's applicability to a cause of action based upon a post-sale duty to warn.[2] However, in applying the economic-loss doctrine, these courts have relied upon *East River* and, in particular, on its emphasis on the nature of the harm to the plaintiff. *See Lower Lake Dock v. Messinger Bearing*, 395 Pa.Super. 456, 577 A.2d 631, 635 (1990) (upholding dismissal of negligence claim where the only harm was economic); *N.Y. State Elec. & Gas v. Westinghouse*, 387 Pa.Super. 537, 564 A.2d 919, 925–26 (1990) ("[W]here an allegedly defective product causes damage only to itself, and other consequential damages resulting from the loss of the use of the product, the law of contract is the proper arena for redressing the harm"); *REM Coal*, 563 A.2d at 134 (holding that a cause of action in tort does not exist "where the only resulting damage is to the product itself.").

In predicting that the Pennsylvania Supreme Court would adhere to the reasoning of *East River* on a particular set of facts, the United States Court of Appeals for the Third Circuit similarly emphasized the nature of the harm involved, stating: "As we read *East River*, it is the character of the plaintiff's loss that determines the nature of the available remedies." *King v. Hilton–Davis*, 855 F.2d 1047, 1051 (3d Cir.1988), *cert. denied*, 488 U.S. 1030, 109 S.Ct. 839, 102 L.Ed.2d 971 (1989). Thus, even though the plaintiffs in *King* framed their claim as one of failure to warn (although not of the post-sale variety), the court held that the economic-loss doctrine precluded the plaintiffs from recovering in tort because their damages were purely economic. *Id.* at 1048, 1053; *see also PPG Indus., Inc. v. Sundstrand Corp.*, 681 F.Supp. 287, 288, 290 (W.D.Pa.1988) (denying tort remedies where plaintiff framed com-

---

1. Indeed, *East River* declined to reach the question whether the economic-loss doctrine applied to all tort claims. *See East River* 476 U.S. at 871 n. 6, 106 S.Ct. at 2302 n. 6 ("We do not reach the issue whether a tort cause of action can ever be stated in admiralty when the only damages are economic.").

2. The single case in which the Pennsylvania Supreme Court has found that a cause of action existed for a post-sale failure to warn was one in which the failure to warn resulted in death. *See Walton v. Avco Corp.*, 530 Pa. 568, 610 A.2d 454, 456, 459–60 (1992). Thus, the court had no occasion to discuss the economic-loss doctrine.

plaint in terms of misrepresentation through failure to disclose); *Eagle Traffic Control v. Addco,* 882 F.Supp. 417, 419 (1995) (stating that Pennsylvania law precludes a plaintiff from recovering in tort where purely economic losses occurred due to, *inter alia,* negligent misrepresentation).

In the case at bar the harm alleged is purely economic.[3] Moreover, at least three of the rationales for the Supreme Court's holding in *East River* are applicable to the present case. (Two of these rationales have also been voiced by the courts of Pennsylvania, and the third was invoked by the Third Circuit in predicting that the Pennsylvania Supreme Court would follow the reasoning of *East River.*) *First,* courts should respect the parties' initial, conscious allocations of risk. *See East River,* 476 U.S. at 872–73, 106 S.Ct. at 2302–2303 (stating that contract law is well suited for controversies where parties had ability to set their own terms); *REM Coal,* 563 A.2d at 133 ("[W]arranty law is suited to economic loss cases because in such cases, the parties have the opportunity to have set the terms of their agreement regarding product value and quality in advance."). In the present case, the parties bargained for the sale and purchase of a roof and a ten-year warranty. Alpha then chose not to renew its warranty, instead relying on insurance in the event of losses. This appears to be a conscious and bargained-for allocation of risks. *Second,* permitting claims based upon a postsale duty to warn for purely economic losses would subject manufacturers to liability for "vast sums of money." *See East River,* 476 U.S. at 874, 106 S.Ct. at 2303–2304; *REM Coal,* 563 A.2d at 133 ("[L]imitation of liability is an entirely appropriate brake on the manufacturer's liability in a case involving only the loss of the bargained for product.") *Third,* a rule barring post-sale duty to warn claims in cases of purely economic losses is clear and easily applied, one of the Court's principal concerns in *East River. East River,* 476 U.S. at 875, 106 S.Ct. at 2304; *see also Aloe Coal Co. v. Clark Equip. Co.,* 816 F.2d 110, 119 (3d Cir.) ("[A] murky trudge

through sophisticated nuances gives way to an unencumbered flight to basics. Damage to a product means simply that the customer has received 'insufficient product value,' and maintaining value and quality is precisely the purpose of familiar contract concepts....") (*quoting East River,* 476 U.S. at 872, 106 S.Ct. at 2302–2303), *cert. denied,* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987).

Thus, this court is of the opinion that the Pennsylvania Supreme Court would not find on these facts that Hartford's claim of a postsale failure to warn justifies the creation of an exception to the economic-loss doctrine. The plaintiff's motion for reconsideration is therefore denied.

---

**3.** *Cf. McConnell,* 646 F.Supp. at 1526 n. 7 ("[W]e believe the defective crankshaft was sufficiently dangerous to warrant the imposition of a duty to warn. There is uncontradicted evidence that,

due to the defect in the crankshaft, the engine exploded, releasing hot water and steam that came close to scalding a crew member.").